We'll go on to case number two. Do you want to see if there's something ticking in that bag? No, no, that was a joke. Okay. If you recall, last time it was behind me and I couldn't see it. Listen. Alright. Alright. 14-3131, 14-3182 Boyer v. BNSF Railway Company This is your stomp out. Come on up. If the front row feels better moving, go ahead. Time's up. Time's up. No, no, no. That's a first for you. I'm feeling comfortable already. That's terrible. A person after my own habits. May it please the Court, my name is Christopher Stambaugh, I am appellate counselor of the plaintiffs' appellants on this appeal, and this is not deja vu all over again, and I can tell you why. It is because 88.87 of the Wisconsin legislature clearly recognized that they wanted to limit the remedies for improperly constructed or structurally unsound railroad grades and trusses. The legislature specifically uses the language in 88.871 to say that it is necessary to control and regulate construction and drainage so as to prevent unreasonable damage quote, due to highway or railroad grade construction. So it's not the failure to that, of course, is an ongoing duty. So therefore, as the Court has said, in Wisconsin, the purpose of the statute is to prevent repeated lawsuits because of the failure to construct or maintain the trestle bridge itself, which is covered by the statute. That is why it is obvious in the statute when they say due to, they mean caused by. Only property damage caused by faulty or improper construction and or maintenance of that property of the trestle falls under the statute. And if you go to 88.872 sub c, the Court will note that to get the remedy there must be a sworn statement of the alleged faulty construction. If, judges, we're in a situation where we don't have a claim of faulty construction, what are these people to say relative to a claim? Well, let me ask you this. If the intent of the statute is to prevent repeated damages actions, as you've argued, why is the failure to properly maintain any less susceptible to such actions than claims from failure to properly construct? Because the issue is not, for us, is not maintenance of the trestle itself, the physical trestle. And this is really important to understand because if you look at our complaint judges, what you see is our claim in the complaint is not about that this is caused by some failure of the truss. It's caused by debris coming into it. If we look at Record 21, our complaint, which the Court, as I've heard from the previous argument, must recognize as being correct, factually correct, Burlington Northern, this is Paragraph 1, the bridge trestle became blocked or obstructed, meaning that water could not flow under it because of debris. Paragraph 3, the trestle became blocked from upstream debris, resulting in blockage and preventing the flow of rainfall from freely flowing through the trestle, meaning underneath, just like any other bridge. And finally, this caused a catastrophic, man-made, preventable flooding and water invasions on plaintiff's property by failing to prevent debris and other obstructions, basically blocking the underside. So the issue is not maintenance of the trestle, the bridge. The bridge never failed. It was the maintenance of the area, the upstream area, which is not part of an improvement to property, which is specifically covered by the statute. So when you look at that, and then we go as well to Section 88.871, and then you read 2C, which is once again, you've got to say, what was the faulty part of this construction? There isn't one in this case. There isn't a fault in this bridge. The issue comes down to this, that it's clear that damage resulting from the construction and or maintenance of the thing constructed, which is either the railroad grade, and do we know what that means, ladies and gentlemen? The railroad grade is simply the slope of the track. Look, why does it matter for purposes of the statute whether the negligent maintenance of the trestle created a one-time hazard versus a continuing nuisance? And how do you know this was a one-time occurrence? With climate change, there could be multiple similar rain events going forward. Judge Rovner, great question. And the issue, but that is really not the issue before us for this reason. Oh, but we think it is. You don't think it is. Sure. Here's the thing. I think we think it is. Well, you may for now, but looking at this statute as they look at each part of it, if you go to the other section, it all has to be caused by the faulty maintenance of this trestle or the railroad grade. If, ma'am, if it's outside of this, if the flooding is caused by something coming in from the outside that is not part of a failure of the trestle, is not part of a failure of the grade, meaning every other case that this court is considering relative to this line, what happened? Sorry, it's getting a little dry here. That's okay. Every other case, be it Colbeck or Pruitt, in every time there's a failure of the device, there's a failure of the road, or there's a failure of the shoulder, meaning the thing that is created that changed the normal drainage. In this case, there is not a failure of the trestle, and there's not a failure to maintain the trestle physical, the physical part of that bridge. The failure is negligence in allowing debris to form upstream so that it came into and under the trestle and blocked the trestle. The trestle didn't fail BNSF. BNSF failed the trestle. The trestle didn't break. There's no part of it that hung down that created this. It's merely the same as if they had parked equipment just upstream, and suppose that, that they had parked equipment in the line and just left it there. Water comes through and forces that equipment underneath and causes a blockage. Is that a failure of the trestle? No. It's a failure of BNSF. It's also not a failure of the grade because the grade is merely the slope of the track. Let's go on to claimant preclusion. With respect to claimant preclusion, why wouldn't the spouses of the Irish plaintiffs be in privity with the current plaintiffs if they occupied the same households? Sure. I didn't know if this was part of my rebuttal because that's their claim, but I'm happy to move to that if you want to right now. The reason why is that this is a property damage type of claim. And under Wisconsin law, the husband and wife may have community property, but if you get your property or you inherit it, they have no right in your property. They have no individual right or in your personality, meaning anything that you happen to own personally. Also, most of the people, I think, who are involved here were actually not even Wisconsin residents. So what needs to happen relative to the spouses is at least some inquiry, some factual inquiry, not necessarily to be decided by a jury, but some factual inquiry. Now when we were, that isn't just the introductory part of the statute, Judge, that deals with what the causation aspect is. You keep going and it's replete with it. It has to be caused, the harm has to be caused by a failure of the improvement to property itself or the grade. And what we see here, even when we get into section right here, into section 2A, it says whenever any county or railroad, I'm going to read just the railroad parts, but whenever the railroad company has heretofore constructed and now maintains or does afterwards any highway or railroad grade across a marsh, watercourse, natural or otherwise, it shall not impede the general flow of surface water so as to cause either an unnecessary accumulation of waters or water soaking to the end of maintaining the natural thing. Well here's the problem. In this case, it wasn't the failure of the maintenance of the trestle itself. It was a failure to do things that were upstream which allowed it to get blocked. It's just like in your bathroom. You can have a perfectly operating tub, but if somebody doesn't allow its hair to accumulate, you will have a blockage. That doesn't mean it's broken. Not in my case, but go ahead. Well sure. I have a full head of hair. I share my position with your point. Right. But look at the statute. Every time the statute is dealing with this, it is doing this in three separate places. It's saying it has to be caused by the construction or the maintenance of the thing. Let me ask you about this. The Wisconsin Appellate Court in Pruim said that the statute applied to claims regarding highway construction and repair. So would we have to say that Pruim is wrong for you to succeed in this case? Absolutely not. Pruim is right on for that point. Then why do you want us to certify? Because it's still a... If Wisconsin is right, what would we be doing to certify? Well, because it could be your preference. Because the Wisconsin Supreme Court has not spoken to this. And you are not bound under the Erie Doctrine to a Court of Appeals decision, which is quite distinguishable. Because remember in Pruim what happened. In Pruim there was an actual failure of the highway and a failure of the shoulder. It is exactly, it's in the sweet spot of this statute. And that failure caused it. In fact, that was the allegation. That was the failure of the construction and the new improvements to land caused the problem. This is just like saying this. Clearly the bridge is there. But the fact that the bridge is there doesn't mean that it's a cause. Any more than if I took, or if somebody took a car and ran into a bridge because they weren't paying attention to what happened. It doesn't mean the bridge caused the collision because they were inattentive. In the same way BNSF was completely inattentive to their watershed essentially that was up north. What connection did Arkansas have to this litigation? First of all, this is not the same litigation as the previous one. What connection did Arkansas have to this litigation? The connection that Arkansas had to this litigation, Your Honor, is that it was an appropriate venue for new claims involving BNSF because they did substantial business there. Arkansas law is favorable on a procedural basis. Wasn't that really forum shopping, judge shopping? Well, if it was merely forum shopping, we would have made exactly the same claims and we didn't. Our claims now have to do with maintenance and even though it talks about maintenance of the trestle, it's very clear from our evidence of what led into the trestle and blocked it. That's the point. Thank you. Mr. Thornton. Yes, Your Honor. Hi. Oh, you're just calling my name. I'm calling your name. I thought you were asking me a question. Do you have anything to say? Oh, the other way. What I have to say is I think this court has already decided this case. The exact same argument... We never make our minds up until we leave, unless you're talking about the last case. I'm talking about the last case. I'm talking about the last case. This court examined the question of maintenance in some detail. As a matter of fact, the first sentence that you wrote, Judge Robner, was this is a lawsuit in search of a viable theory of recovery. It was a bit unkind. In the Irish case, they tried a number of machinations, a number of efforts to save the case from dismissal. It was finally dismissed by Judge Crabb. They admit on page 9 of their brief that one of the grounds of Judge Crabb's dismissal was faulty maintenance. Judge Crabb then asked them to address the employees. They asked for an opportunity to amend and to amend again. Then they went down to Arkansas, and as the court pointed out, Arkansas had nothing to do with this case. They talked about looking for a fresh pair of judicial eyes. They talked about that this court had made an error, and then in Arkansas that error might be made again. We then transferred the case, or first we moved the case to federal court, then we transferred the case back to Wisconsin, and they appealed twice to the 8th Circuit. Can you tell me what your fees and expenses were for the detour through Arkansas and the 8th Circuit? Not off the top of my head, Your Honor, but I know that we've spent a substantial amount of money on this case for essentially the same reasons that we spent it the first time. For example, the affidavit that we had to do in response to Judge Crabb's request to verify that every one of these 60-some persons was not a Delaware or Texas resident, that itself was significant. We're talking easily in the vicinity of $100,000 that's been spent on this case so far, and it's a case that this court resolved, Judge Crabb resolved, and doesn't need to be brought up again. This court rejected out of hand the argument that somehow or another that this case was limited to construction, but then it said that the court had not fully developed that matter, or that matter had not been fully developed below. Judge Crabb took a look at the statute, and a plain reading of the statute found that maintenance was expressly covered, that this was the exclusive remedy, and that common law claims preempted everything else, and also that damages were not available. That's exactly what's in this case is damages. The sojourn to Arkansas was an admitted effort to look for a fresh pair of judicial eyes, look for somebody who might be willing to overturn what this court ruled. That is a direct defiance of stare decisis, and there is no reason to certify this case to the Supreme Court. The court has found in Purim that this statute was unambiguous, and in the unambiguous provisions of this statute precluded any relief except for equitable relief or inverse combination. The statute expressly says it excludes money damages, and the statute expressly includes maintenance. The reading that plaintiffs give to the suggestion that the three or four references in the statute to maintenance somehow relate to ownership of the property and not repair of the property is ridiculous on its face, and it really calls out for this court to level sanctions. The argument was dealt with at some length, Judge Revenner, in your opinion before, and you ultimately said it was not necessary to go there because it hadn't been fully developed below. Well, it was fully developed below, and Judge Crabb looked at it and looked at the unambiguous language according to Purim case of the statute and found that that was the exclusive remedy. The Colberg case, the Benn case, and the Hilliard case all are on point. It's also important to remember that they have completely failed to follow the statute. The statute requires a three-year statute of limitations, 90 days filing thereafter, and a notice that lays out exactly what was wrong with their property and with legal description. They've completely ignored the provisions of the statute, whereas the Benn v. Manitowoc Rapids case says the provisions of the statute are mandatory and must be followed, and if they're not followed that the case can't go forward. Now, in paragraph 25 and 27 of their amended complaint they mention section 88-87 at least three times, yet they ignore the statutory mandatory procedures that the Van Court case says have to be followed for 88-87 to be brought to bear. They obviously didn't comply with the notice requirement. I'm sorry? They did not comply with the notice requirement of 88-87. They didn't comply with the notice requirement, they didn't comply with the statutory limitations period, and the case of Kohlbeck v. Reliance Construction Company says that that remedy is the exclusive remedy for flooding caused by rail grades or highway departments as it relates to landowner claims. In terms of claim preclusion or res judicata, the issues are is there an identity of parties, is there an identity of causes of action, and was there a final judgment? Well, there can't be any question about that there was a final judgment. There can't be any question about that there is an identity of causes of action. The only distinction is, the only possible difference is there isn't an identity of parties. The court can contrast the Pasco decision decided by the Wisconsin Supreme Court with the Chicago Police decision, where in one case they were advocating individual claims, do have a privity of interest, whereas a union that has wider concerns, as is in the Pasco case, doesn't have those same issues. As to the lawyer being the same, the transaction that gives rise to this case being the same, the panel deciding this case being the same, despite counsel's best efforts, the lower court judge deciding this case is the same, it brings to mind the Bethesda Lutheran Home case, where Judge Posner of this court said that it was an error to not assess sanctions below because adding new plaintiffs doesn't unbar barred claims. Even if claim preclusion didn't apply, issue preclusion certainly applies. The judges look for finality and efficiency, and this is a direct contribution of finality and efficiency. The Jensen versus Milwaukee Mutual case is a case that found, it's their bus case exactly. It was a husband and wife who were in a car, the husband got in an accident with Milwaukee Mutual's insurers, the husband brought an action, the wife supported that action. The court found that the spouse was bound by the disposition of the case against the husband. The Degulli, I'm not sure if I'm pronouncing that right, D-E-G-U-L-L-E versus Camelot case, said the five factors to be considered for collateral estoppel, which Judge Posner also said he didn't quite understand, was whether an appeal could be taken. One is shocked. He doesn't understand something, but go ahead. That's what he wrote. He didn't really believe it, you know. Anyways, all of the Degulli factors except whether the party can take an appeal of that order are satisfied, and in the Degulli case they said that was sufficient to allow collateral estoppel issue preclusion to apply. It was the same case, the same laws, there was a full litigation by the same parties represented by the same lawyer and the Irish certainly had a motivation to seek the necessary relief and the Irish aggressively pursued it. This is a matter where Judge Crabb did err in failing to assess Rule 11 and statutory 28 U.S.C. 1927 sanctions. This case defies the law. It is the classic example of a frivolous case that is repetitive of what this court already decided. The counsel has failed to take reasonable inquiry both of the statutory provisions and the clear language of the statute that it only allows for damages and covers maintenance and also even though he cites the case at least three times in his complaint he ignores the procedural provisions of the statute, fails to give any kind of notice, ignores the three year statute limitation, and fails to give the description of what was required. Significantly, three of the four Irish plaintiffs are still in this case. That manner was brought to the counsel's attention and he nevertheless appealed on behalf of those parties to this case. How many are dead? Four are dead. Four are dead. One died before the flood. The three others died before the case. It's rudimentary law in Wisconsin. Dead people can't bring claims. Can they in any other state? No other state are they allowed to bring claims. Boy, would we be inundated. You didn't check that before you spoke. You just assumed it. I've read a lot of cases. They certainly aren't in the twenty or so states that I've read about are dead people allowed to bring claims. It's very hard for them to do anyway. It's very hard for them to do. For their lawyer to consult with them unless they're somehow involved in a seance or something like that, I don't know how they could possibly consult with these dead people. Reasonable investigation before bringing this claim, you just compare the caption of the Irish case with the Boyer case and you see that three of the four are Irish plaintiffs and four of the four are dead people. How those can be brought is beyond comprehension. Even if the court were willing to give counsel a break on the matters of the other Boyer plaintiffs as it relates to the Irish plaintiffs, as it relates to the Irish spouses, as it relates to the dead people, they had plenty of notice. We gave them plenty of notice of that situation. They continue, they list those people by name before this court and didn't drop those claims despite Judge McClain preclusion prevented the Irish plaintiffs from participating in this matter. This certainly has been a case that has been multiplied and unreasonably and vexatiously by counsel and they make a big point about these are poor people living in the neighborhood and BNSF is a rich corporation. But we're not seeking sanctions against the plaintiffs. We're seeking sanctions against counsel because counsel is the one who's perpetrated this on the court and on BNSF. As rule, our statute 1927 makes clear when one party causes another party to incur additional costs that party should bear those costs. And it's not subjective bad faith is not necessary. A pure heart and an empty head is no excuse for what happened. Even if the court in deference, well this time it was Judge Easterbrook instead of Judge Posner, adopted the deferential standard of reviewing what the court below does this court under rule 38 has the power to grant sanctions itself when the appeal is frivolous and when you think it's an appropriate case for sanctions to be issued. To start this case in Arkansas State Court, resist the removal to when it's clearly a diversity case, to resist the transfer to the Western District of Wisconsin to go twice to the 8th Circuit to then resist what this court clearly expressed doubts about but said it wasn't necessary to decide and then when Judge Crabb engaged in a clear statutory interpretation of the plain language of the statute and then to take this appeal if this isn't the stuff that is a frivolous appeal that is appropriate for sanctions under rule 38 by this court then in 40 some years of practice I don't know what the case would be but this certainly is. The honors. They have brought a motion for sanction in the 8th Circuit Court of Appeals. The 8th Circuit Court of Appeals denied it after reviewing their motions. That was the 8th Circuit. Yes ma'am. You are now in the 7th. I am and this is a lawsuit that was filed by Arkansas Council, signed by Arkansas Council in the 8th Circuit in a state court. It is not inappropriate to bring a claim where there is appropriate venue even if the defense doesn't like it. So Arkansas Council did this independent of you and didn't consult you and you were surprised by this? I was surprised because I was in trial in Wisconsin in a two week trial when it got filed. I learned later but here is what Judge Crabb did. What Judge Crabb did is she dismissed the plaintiffs. We did not resist the dismissal in this case. The review is for abuse of discretion. The defense had made the same type of motions. And you didn't have anything to do with the objection to moving it to federal court in Arkansas? We had, I was named a counsel of record. I was on there. I did not file it and more importantly. But you allowed your name to be there as counsel. That is correct. I'm not ashamed of that. And neither I think should I be. Judge Crabb also denied these sanctions. This is, you know, Judge Crabb clearly is in the best position of having sat through the Irish case as well as this. You know, wrote the defense did not show claim preclusion should apply to the vast majority of the plaintiffs. And could not go for the claim to be frivolous. This would have been a normal case, your honors. This would have been dealt with as a housekeeping matter. But from the very beginning we were fighting the dismissal of this case and their claim for sanctions. And Irish left, this Irish decision of this court left open for consideration the maintenance issues of the adjacent roadbed and the adequacy of inverse condemnation. But I want to ask you a question. He says we didn't file a notice. We didn't do this and didn't do that. Your honors, I must stress was this caused by the trestle or the grade? If it wasn't caused by the trestle or the grade, then we don't have a claim to file. The claim would have required us to say what the specific faulty construction was. There wasn't any. Our claim is that it wasn't caused by this. So the idea of pruim doesn't matter because pruim is because of causation by the faulty roadway and by the faulty shoulder. That's not the case here. And it's not our claim and it's not what we allege in the original complaint. What we allege in the complaint, your honors, is simply this. What we allege is that it was caused by the debris field coming in and blocking the trestle. That's not a failure. Thank you very much. I will give you Mr. Thornton 10 days to get your costs that were associated with the Arkansas situation to the panel. Yes. Yes. And I'll give you 10 days to respond. And the case will be taken under advisement. And that is there was a claim dealing with the diversity and those issues by Judge Kraft with respect to the Wisconsin case. That had nothing to do with Arkansas. I have no... That's... Yes. You'll be able to respond to Mr. Thornton's submission. 10 days. Thank you very much. Case is taken under advisement.